**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | |
|---|---|
| FALENCIA FAIR, ) | CASE NO. 1:21-CV-00893-CEH |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | CARMEN E. HENDERSON |
| ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | MEMORANDUM OPINION AND |
| ) | ORDER |
| Defendant, ) | |

**I.      Introduction**

Plaintiff, Falencia Fair, seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 15). For the reasons set forth below, the Court AFFIRMS the Commissioner's final decision denying Fair SSI and DIB.

**II.     Procedural History**

On January 31, 2019, Fair filed applications for SSI and DIB, alleging a disability onset date of June 27, 2018. (ECF No. 7, PageID #: 235). The applications were denied initially and upon reconsideration, and Fair requested a hearing before an administrative law judge ("ALJ"). (ECF No. 7, PageID #: 257). On May 28, 2020, an ALJ held a hearing, during which Fair, represented by counsel, and an impartial vocational expert testified. (ECF No. 7, PageID #: 130). On July 22, 2020, the ALJ issued a written decision finding Fair was not disabled. (ECF No. 7,

1

PageID #: 110). The ALJ's decision became final on March 4, 2021, when the Appeals Council declined further review. (ECF No. 7, PageID #: 97).

On April 29, 2021, Fair filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 13, 17). Fair asserts the following assignments of error:

> (1) Whether the ALJ's decision that Plaintiff can perform medium work is supported by substantial evidence when she failed to consider Plaintiff's psychological condition and knee osteoarthritis as severe impairments
>
> (2) Whether the ALJ's decision to not adopt the findings of the functional capacity evaluation (FCE) is supported by substantial evidence

(ECF No. 13 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Fair's hearing:

> The claimant alleges that she experiences dizziness, ringing in her ears, and pain in her back, arms, wrists, knees, and feet. She claims that she cannot sit for longer than 30 minutes, that she cannot stand for longer than 60 to 90 minutes, that she cannot lift more than 10 pounds, that she cannot walk long distances, and that she has difficulty using stairs. She claims that she has difficulty bending, reaching overhead, kneeling, squatting, crawling, and hearing, as well. In addition, she asserts that she has limited mobility in her shoulders. She claims that she spends four to six hours every day lying down. She also alleges that she has memory and concentration problems. Furthermore, she contends that she has difficulty sleeping, performing personal care tasks, and cooking. Moreover, she claims that she does not like interacting with others at times and that she is afraid to travel, and she asserts that she does not handle stress well. Lastly, she alleges that her medications make her sleepy and increase her need to use the restroom. (Exs. 2E at 9, 4E, 8E at 2, 5; HT).

(ECF No. 7, PageID #: 119).

    B.        **Relevant Medical Evidence**

The ALJ also summarized Fair's health records and symptoms:

> With respect to the claimant's lumbar spondylosis and obesity, imaging has shown degenerative changes and scoliosis in her lumbar spine and pelvis. In addition, her body mass index (BMI) has consistently exceeded the obesity threshold of 30. This condition could reasonably be expected to exacerbate the effects of her lumbar and pelvic conditions. However, imaging has shown only "[m]ild scoliosis" and "[m]ild disc space narrowing" in her lumbar spine, as well as "[m]ild, nonspecific sclerosis of the sacroiliac joint spaces." (Exs. 1F at 13, 8F at 150, 9F at 98).
>
> She has complained of low back pain that radiates to her bilateral lower extremities and of pain between her shoulders. She has indicated that sitting, changing position, bending, and stress exacerbate her pain. On the other hand, she testified that she does laundry, that she can push a cart in a grocery store, and that she can bathe and dress herself. (Exs. 1F at 13, 24; 2F at 15, 9F at 90, 13F at 2-3; HT).
>
> She has exhibited limited spinal and shoulder range of motion, lumbar tenderness, and limited hip and knee strength. During a Functional Capacity Evaluation performed in March 2020, she lifted only 10 pounds to shoulder height and carried only 10 pounds. However, she has also exhibited full spinal range of motion, full motor strength, and intact sensation. She has exhibited a normal gait, as well. Moreover, she has had multiple negative straight leg raise tests. Notably, during a consultative examination with Dr. Dorothy Bradford, M.D. in April 2019, less than 12 months after the alleged onset date, she displayed universally normal strength, sensation, range of motion, and reflexes, exhibited a normal gait, and had negative bilateral straight leg raise tests. Furthermore, during a physical therapy session on the day before her March 2020 Functional Capacity Evaluation, she displayed full lumbar range of motion, no symptoms during or after repeated lumbar extension while standing, no symptoms after repeated lumbar flexion while standing, tightness rather than pain during repeated lumbar flexion while standing, and no less than four-minus out of five strength in her bilateral hips. Finally, during her Functional Capacity Evaluation, she displayed sub-maximal effort. (Exs. 1F at 10, 13-14, 24-25; 4F, 8F at 101, 132, 152; 9F at 92, 126-27; 13F at 3, 15F at 17, 31; 16F at 23).
>
> She has received treatment from pain management specialists and

has been prescribed multiple pain medications. Notably, radiofrequency ablation was recommended to her in 2018, but her insurance did not cover the procedure. On the other hand, in January 2020, she indicated that she was using only Tylenol and Mobic for her pain. (Exs. 1F at 12, 9F at 90). Furthermore, although she sought emergency treatment for low back and groin pain in August 2018 and November 2019, her records do not reflect other episodes of emergency treatment for her back pain (Exs. 1F at 31, 8F 129). In addition, although she began undergoing physical therapy in October 2018, she did not follow up for treatment after that month, and she was discharged (Ex. 1F at 7). Likewise, as is discussed above, although she underwent physical therapy beginning in October 2019, she was discharged in December 2019, after only three sessions, "due to goal achievement and maximal benefit." In February 2020, she began another course of physical therapy for back pain and bilateral radicular symptoms. However, she demonstrated "improvements in overall pain and progression with gluteal and core strengthening/stabilization" after only three sessions. Moreover, after four sessions, she did not return to therapy, schedule follow-up sessions, or discuss how to pursue therapeutic treatment during the COVID-19 pandemic, and she was discharged from treatment. (Exs. 9F at 124, 145; 16F at 21).

With respect to the claimant's hearing loss, diagnostic testing performed in June 2017 showed "moderate sensorineural hearing loss" in the claimant's left ear. However, it also showed that this hearing loss rose to "normal hearing sensitivity." Additionally, the claimant displayed "good" word recognition ability in the left ear "when presented [at] normal conversational levels." Moreover, the testing showed no significant problems with her right-sided hearing. Notably, Ashley Tatarka, BS, the doctor of audiology extern who performed the testing, indicated that the type of hearing loss shown by the testing would "impact communication in complex listening environments or in the absence of facial cues." (Ex. 2F at 23) (emphasis added). It is important to note that this statement is a description of the effects of the type of hearing loss experienced by the claimant rather than an assessment of the claimant's functional ability. It is also important to note that a treatment note from the following month indicates that her hearing loss was "much improved" (Ex. 2F at 21). Furthermore, she exhibited adequate hearing on examination in September 2018 (Ex. 2F at 14). Finally, diagnostic testing performed in April 2019 showed "moderate to mild" hearing loss in her left ear, and she exhibited 90 percent speech discrimination in her left ear. (Ex. 5F).

4

(ECF No. 7, PageID #: 121).

### C. Opinion Evidence at Issue

On March 6, 2020, Christine Ontko, a physical therapist, completed a functional capacity evaluation ("FCE"). (ECF No. 7, PageID #: 942). The FCE indicated that Fair could only occasionally walk, sit, reach, simple grasp, pinch, bend, balance, and climb stairs. (ECF No. 7, PageID #: 943). Fair could stand constantly and coordinate frequently. (ECF No. 7, PageID #: 943). It also showed that Fair should avoid firm grasping. (ECF No. 7, PageID #: 943). Ms. Ontko opined that Fair "demonstrated physical capabilities consistent with the sedentary work level but would need a job that allowed for at will sit-stand option due to her decreased ability to sit for long periods of time." (ECF No. 7, PageID #: 942). The ALJ did not find this opinion persuasive. (ECF No. 7, PageID #: 122).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: lumbar spondylosis, obesity, and hearing loss (20 CFR 404.1520(c) and 416.920(c); SSR 19-2p).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except she can frequently climb ramps and stairs. She cannot climb ladders, ropes, or scaffolding. She can frequently stoop, kneel, crouch, and crawl. She should not be exposed to any more than a moderate noise level.

(ECF No. 7, PageID #: 116, 118–19).

V.     Law & Analysis

   A.        Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

   B.        Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant

work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Fair raises two issues on appeal. First, Fair argues that the RFC is not supported by substantial evidence because the ALJ failed to consider Fair's psychological condition and knee osteoarthritis as severe impairments. Second, Fair asserts that the ALJ's failure to adopt the findings of the FCE was not supported by substantial evidence. The Court will take each argument in turn.

#### 1. Severe Impairments

Fair first argues that her mental health conditions and her knee impairment were severe impairments and the ALJ's failure to consider them as such was error. At step two, the ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not considered severe if it does not "significantly limit [one's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1522(a). The Sixth Circuit "construes step two as a *de minimis* hurdle, intended to 'screen out totally groundless claims.'" *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citations omitted). When an ALJ determines

7

that one or more of a claimant's impairments are severe, the ALJ must proceed to consider the "limitations and restrictions imposed by *all* of an individual's impairments, even those that are not severe." *Id.* (citations and quotation marks omitted). Thus, "any perceived failure to find additional severe impairments at step two [does] not constitute reversible error" as long as the ALJ considered all of the claimant's impairments in the remaining steps. *Id.* (alteration in original) (internal citations and quotation marks omitted).

The Commissioner argues both that the ALJ correctly determined that Fair's knee impairment and mental health conditions were not severe impairments and that there could be no reversible error because the ALJ considered all of Fair's impairments in the remaining steps. Fair does not respond to either argument. Upon a review of the decision, the Court concludes that it is unnecessary to determine whether the ALJ erred in determining that Fair's impairments were not severe at step two because the ALJ concluded that some of Fair's impairments were severe and considered all of Fair impairments in the remaining steps. The Court first notes that in determining that Fair's knee and mental health conditions were not severe impairments, the ALJ thoroughly discussed the relevant medical records. (ECF No. 7, PageID #: 116). The ALJ discussed the imaging and testing performed on Fair's knees and the treatment of them. (ECF No. 7, PageID #: 116). The ALJ also considered all four broad areas of mental functioning and explained why Fair had only mild limitations in each. (ECF No. 7, PageID #: 117). Then, at step four, the ALJ discussed Fair's knee strength. (ECF No. 7, PageID #: 120). The ALJ also considered the medical opinions regarding Fair's mental health conditions and explained why he was persuaded by them. (ECF No. 7, PageID #: 122).

Finally, in explaining his RFC, the ALJ stated the RFC was supported by mild imaging findings, displays of normal physical functioning, and by Fair's "displays of mental functioning,

indications that she can and does engage in multiple activities, significant gap[s] in her therapeutic treatment history, and lack of inpatient or emergency psychiatric treatment." (ECF No. 7, PageID #: 123). The Court is, therefore, satisfied that the ALJ considered all of Fair's impairments, including her knee and mental health conditions, in determining the RFC. Fair does not argue otherwise. Accordingly, the Court concludes that the ALJ did not commit reversible error in finding that Fair's knee and mental health conditions were not severe impairments at step two.

### 2. The Functional Capacity Evaluation

Fair next asserts that the ALJ's decision not to adopt the findings of the FCE was not supported by substantial evidence. At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support

9

or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [] and consistency [] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

As noted above, on March 6, 2020, Christine Ontko, PT, completed an FCE. (ECF No. 7, PageID #: 942). The FCE indicated that Fair could walk, sit, reach, simple grasp, pinch, bend, balance, and climb stairs occasionally. (ECF No. 7, PageID #: 943). Fair could stand constantly and coordinate frequently. (ECF No. 7, PageID #: 943). It also showed that Fair should avoid firm grasping. (ECF No. 7, PageID #: 943). Based on this, Ms. Ontko opined that Fair demonstrated the ability to perform sedentary work. (ECF No. 7, PageID #: 942). She also noted that "Consistency of Effort results obtained during testing indicate that there were segmental inconsistencies resulting in mild sub-maximal effort." (ECF No. 7, PageID #: 942). The reliability of pain results obtained during testing also indicated that "pain could have been considered while making functional decisions." (ECF No. 7, PageID #: 942).

The ALJ did not find this opinion persuasive. He explained:

> The undersigned is not persuaded by the opinion developed in response to the claimant's Functional Capacity Evaluation in March 2020, to the extent this opinion is not a statement on an issue reserved to the Commissioner. (Ex. 15F at 17-18). First, it is important to note that the determination that the claimant can "perform with the Sedentary physical demand category based on the definitions developed by the U.S. Department of Labor and outlined in the Dictionary of Occupational Titles" uses a term that is synonymous with the terminology used by Social Security. Thus, it is a statement on an issue reserved to the Commissioner, and the undersigned has therefore not provided written analysis of it. Nevertheless, the undersigned has provided written analysis of the remaining determinations that are a part of this opinion. Although these determinations are supported with an evaluation of the claimant's functioning, they are supported with only one evaluation during which the claimant displayed sub-maximal effort, and they are inconsistent with the State agency physical consultants' findings, Dr. Bradford's opinion, and the evidence

10

> cited in the paragraph discussing the State agency physical consultants' findings.

(ECF No. 7, PageID #: 122).

Fair argues the ALJ's reasons for finding the opinion not persuasive are "illogical and should be found not supported by substantial evidence." (ECF No 13 at 16). The Court disagrees. First, the ALJ properly concluded that he did not have to discuss Ms. Ontko's opinion that Fair could perform sedentary work. The ALJ is not required to provide any analysis of evidence that is inherently neither valuable nor persuasive, including "[s]tatements about what [a claimant's RFC] is using our programmatic terms about the functional exertional levels in Part 404, Subpart P, Appendix 2, Rule 200.00 instead of descriptions about [the claimant's] functional abilities and limitations." 20 C.F.R. 404.1520b(c)(3)(v). Second, as for supportability, the ALJ correctly noted that the opinion was based on a one-time evaluation during which Ms. Ontko stated that Fair displayed sub-maximal effort. Fair takes issue with this conclusion, arguing that Ms. Ontko stated that Fair's complaints of pain were reliable. The Court first notes that Ms. Ontko did not state that Fair's complaints of pain were reliable, but that pain could have been considered when making functional decisions. Regardless, even if Ms. Ontko did say that Fair's statements of pain were reliable, the fact that this was a one-time evaluation where the evaluator stated that Fair demonstrated sub-maximal effort is substantial evidence to support the ALJ's conclusion. Nonetheless, Fair asserts that it was illogical for the ALJ to conclude that a one-time examination of Fair was unreliable while also concluding that the state reviewing agency consultants' opinions were reliable where they had not examined Fair at all. The Court disagrees. The state reviewing consultants may not have examined Fair, but they reviewed her medical record, giving them the complete picture of her impairments. The ALJ also noted that the state reviewing consultants provided specific references to the medical record in making their decision. The ALJ

11

did not err in taking this into account when determining supportability. Further, as noted, the ALJ did not simply rely on the fact that it was a one-time examination, the ALJ also relied on the fact that the evaluator noted that Fair displayed sub-maximal effort. This is substantial evidence to support his supportability decision.

Finally, the ALJ reasoned that the opinion was not persuasive because it was inconsistent with the state agency consultants' and Dr. Bradford's opinions and the medical evidence. For example, in finding that state agency consultants' opinions persuasive, the ALJ relied on "mild imaging findings, . . . indication that [Fair] engages in multiple activities, displays of normal and nearly normal physical functioning, sub-maximal effort on her Functional Capacity Evaluation, use of low-strength pain medication, general lack of emergency treatment for pain, and inconsistent compliance with physical therapy." (ECF No. 7, PageID #: 121). Moreover, elsewhere in the opinion, the ALJ noted that during a physical therapy session on the day before the FCE, Fair "displayed full lumbar range of motion, no symptoms during or after repeated lumbar extension while standing, no symptoms after repeated lumbar flexion while standing, tightness rather than pain during repeated lumbar flexion while standing, and no less than four-minus out of five strength in her bilateral hips." (ECF No. 7, PageID #: 120). This is substantial evidence to support the ALJ's conclusion that the FCE—which indicated that Fair could only occasionally walk, sit, reach, bend, and balance—was inconsistent with the medical record. The Court, thus, concludes that the ALJ appropriately discussed the supportability and consistency of the FCE and supported his decision with substantial evidence. Accordingly, the Court finds no reason to disturb the ALJ's decision.

**VI. Conclusion**

Because the ALJ followed proper procedures and his findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying Fair DIB and SSI.

IT IS SO ORDERED.

Dated: June 2, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE